THE STATE OF OHIO, APPELLANT, *v.* SPARANO ET AL., APPELLEES.

(Nos. 47642 and 47643 — Decided July 19, 1984.)

*John T. Corrigan,* prosecuting attorney, for appellant.

*Elmer Giuliani, James Carnes* and *Laurence A. Turbow,* for appellees.

JACKSON, J. This is an appeal by the state from a decision of the court of common pleas, dismissing the indictment against the defendants-appellees for forgery, uttering, receiving stolen property, and petty theft.

On February 5, 1982, police investigated an alleged sexual assault at the Sheraton Inn in Beachwood, Ohio. As a result of this investigation the appellees, John Sparano and Gregory Valore, were indicted on February 10, 1982, for rape, gross sexual imposition, and intimidation. The matter came to trial in November 1982, and appellees were acquitted on all counts following trial to the court.

On February 22, 1983, indictments were issued against Sparano and Valore on new charges. Valore and Sparano were jointly indicted for forgery, uttering, receiving stolen property, and petty theft, in connection with their use of a stolen credit card on February 5, 1982 (the date of the alleged rape) to rent a room at the Sheraton Inn. Valore was also separately indicted for forgery, uttering, and petty theft, for using the same credit card at a shoe store on February 5, 1982.

Appellees filed a motion to dismiss the indictments. In their written motion, they claim that they were denied their constitutional right to a speedy trial, and that the state violated their rights to due process of law through deliberate and unnecessary delay. Following an evidentiary hearing on the motion, the defense added another argument in support of the motion to dismiss; appellees contended that they were being put in double jeopardy for the same offense. The trial court granted the motion without specifying the grounds for its decision.

The prosecution appeals. In support of its position that the court erred in granting the motion to dismiss, the state contends that the rule against double jeopardy is not applicable to the facts in this case. The state fails to address the speedy trial or due process issues. The appellees, in their answer brief on appeal, address the speedy trial question.

I. Double Jeopardy

The Bill of Rights of the Constitution of the United States, and the Bill of Rights of the Ohio Constitution, both contain a prohibition against "double jeopardy" for the *"same offense."*[1]

---

[1] Fifth Amendment, United States Constitution:

"* * * nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; * * *"

Section 10, Article I, Ohio Constitution:

The United States Supreme Court has clearly defined the circumstances in which the Double Jeopardy Clause applies. In the case of a single prosecution, multiple punishments are prohibited if one offense is a greater or lesser included offense of the other, unless the legislature clearly indicates an intention that the punishments are to be cumulative.[2] *Missouri* v. *Hunter* (1983), 459 U.S. 359; *Harris* v. *Oklahoma* (1977), 433 U.S. 682; *Blockburger* v. *United States* (1932), 284 U.S. 299. This standard is known as the "elements" test, because to determine whether two offenses stand in the relation of greater to lesser included offense, the statutory elements are compared, and if one offense contains all of the elements of the other, plus additional elements, then it is the greater offense, and the other is the lesser included offense. If each offense, as defined by statute, contains an element which the other does not, the offenses are not related as greater and lesser included offenses.

Obviously the offenses related to the alleged sexual assault bear no relation to the offenses relating to use of the stolen credit card to obtain a hotel room. The rape is even more remote from the subsequent use of the credit card to purchase shoes. For this reason, the prosecution urges that the Double Jeopardy Clause does not apply to these facts.

But the United States Supreme Court has created an additional test to be employed when the defendant is threatened not only with multiple punishments, but multiple prosecutions. Multiple prosecutions, of course, entail a significantly harsher burden than the threat of multiple punishments in a single criminal proceeding. A citizen might be forced, by a vindictive government, to stand trial indefinitely, perhaps unable to post bond, on multiple charges stemming from a single criminal episode.

The Double Jeopardy Clause, as applied in cases of multiple prosecutions, is interpreted in the following excerpt from *Brown* v. *Ohio* (1977), 432 U.S. 161, 166-167, fn. 6:

"The *Blockburger* test is not the only standard for determining whether successive prosecutions impermissibly involve the same offense. Even if two offenses are sufficiently different to permit the imposition of consecutive sentences, successive prosecutions will be barred in some circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first. Thus in *Ashe* v. *Swenson,* 397 U.S. 436 (1970), where an acquittal on a charge of robbing one of several participants in a poker game established that the accused was not present at the robbery, the Court held that principles of collateral estoppel embodied in the Double Jeopardy Clause barred prosecutions of the accused for robbing the other victims. And in *In re Nielsen,* 131 U.S. 176 (1889), the Court held that a conviction of a Mormon on a charge of cohabiting with his two wives over a 2½-year period barred a subsequent prosecution for adultery with one of them on the day following the end of that period.

"In both cases, strict application of the *Blockburger* test would have permitted imposition of consecutive sentences had the charges been consolidated in a single proceeding. In *Ashe,* separate convictions of the robbery of each victim would have required proof in each case that a different *individual* had been robbed. See *Ebeling* v. *Morgan,* 237 U.S. 625 (1915). In *Nielsen,* conviction for adultery required proof that the

---

"* * * No person shall be twice put in jeopardy for the same offense."

[2] Multiple convictions for greater and lesser offenses, and other related offenses, are prohibited under Ohio's multiple offense statute, R.C. 2941.25.

defendant had sexual intercourse with one woman while married to another; conviction for cohabitation required proof that the defendant lived with more than one woman at the same time. Nonetheless, the Court in both cases held the separate offenses to be the 'same' for purposes of protecting the accused from having to ' "run the gauntlet" a second time.' *Ashe, supra,* at 446, quoting from *Green* v. *United States,* 355 U.S. 184, 190 (1957).

"Because we conclude today that a lesser included and a greater offense are the same under *Blockburger,* we need not decide whether the repetition of proof required by the successive prosecutions against Brown would otherwise entitle him to the additional protection offered by *Ashe* and *Nielsen.*"

The Ohio Supreme Court had previously employed only the "elements" test to determine whether offenses are the "same" for double jeopardy purposes, where the accused was threatened with multiple prosecutions. *E.g., State* v. *Best* (1975), 42 Ohio St. 2d 530 [71 O.O.2d 517]. The holding in *Best* was overruled by the United States Supreme Court in *Brown* v. *Ohio, supra,* and in 1980, the Ohio Supreme Court stated the correct rule in paragraphs three and four of the syllabus in *State* v. *Thomas* (1980), 61 Ohio St. 2d 254 [15 O.O.3d 262]:

"3. For purposes of the Double Jeopardy Clause, in deciding whether the same act or transaction constitutes a violation of two distinct statutory provisions or only one, a determination must be made as to whether each provision requires proof of a fact which the other does not. (See *Blockburger* v. *United States,* 284 U.S. 299.)

"4. Even though the same act or transaction may constitute a violation of two distinct statutory provisions and would permit the imposition of multiple sentences, successive prosecutions will be barred in certain circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first. (See *Ashe* v. *Swenson,* 397 U.S. 436, and *Nielsen, Petitioner,* 131 U.S. 176.)"

Would a trial on the charges stemming from use of the stolen credit card to obtain a hotel room, and to purchase shoes, involve a relitigation of the same facts involved in the sexual assault case? Obviously not. Accordingly, the subsequent prosecution is not barred under the Double Jeopardy Clause of the Constitution.

## II. Speedy Trial and Due Process

The right to a speedy trial is also secured by the federal and state Constitutions.[3] It is alleged in the case at bar that the state failed to *commence* criminal proceedings in a timely manner.

Pre-indictment delay has been held to justify the dismissal of charges. *State* v. *Meeker* (1971), 26 Ohio St. 2d 9 [55 O.O.2d 5] (delay of six years). Four factors are to be applied in determining whether a defendant's constitutional right to a speedy trial has been violated:

"* * * Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker* v. *Wingo* (1972), 407 U.S. 514, 530.

Prior to arrest or indictment, the accused cannot assert his right to a speedy trial. Therefore, there was no waiver of this right in the case at bar. On the other hand, the defendants have not demon-

---

[3] The Sixth Amendment to the Constitution of the United States provides in part:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * * *."

Section 10, Article I of the Ohio Constitution states in part:

"* * * In any trial, in any court, the party accused shall be allowed * * * to have * * * a speedy public trial * * *."

strated that they would be prejudiced by the one-year delay in the bringing of the indictment.

There is a dispute of fact on the question of the reason for the delay. The state contends that it was not aware of the theft and forgery until close to the time of the first trial. The defense contends that the state knew much earlier.

Evidence of the state's lack of diligence is based *solely* upon the testimony of Bernard Eck, the general manager of the hotel where this incident occurred. During the hearing on the appellees' motion to dismiss, he testified, on direct examination, that he turned over to the police information about the registration and mode of payment six to ten days after the date of the crime. On cross-examination, Mr. Eck qualified his answer:

"Q. Could it have been later than ten days, as you said?

"A. It could have been.

"Q. Could it have been several months?

"A. Several months?

"Q. Yes.

"A. It's not — possibly. I thought it was right after the incident."

On redirect, the witness became even more equivocal:

"Q. Your best recollection is that it was six to ten days after the incident, is that correct?

"A. That's what I felt, yes.

"Q. You are not moving from that statement?

"A. But it's — being what he says, I don't know.

"Q. When you say you don't know, did you get a receipt for those documents?

"A. No, nothing, when they picked them up.

"Q. And you haven't seen those documents to this day, have you?

"A. Only at the court last time.

"Q. All right. Now, in relationship to the time you testified in court, this was in November of 1982; is that correct?

"A. I believe so.

"Q. How many months would you say prior to that time did you give those documents over to the police?

"A. It seems to me like it was like immediately afterward, but I could be wrong.

"Q. But you didn't give it to them a week before you testified, is that correct?

"A. I don't believe so.

"Q. A month before?

"A. I can't say. It is totally blank on me for some reason. I think it was right after the incident. It could have been either way."

Further, on redirect, Mr. Eck testified that he "felt" it was six to ten days after the incident that he gave the police the relevant information:

"Q. All right. Now, in relationship to that interview with Mr. Turbow, how many days later do you think you gave the credit card information, registration, and whatnot to detective Berline?

"A. That was what date?

"Q. That would be from February 5th of 1982, did you talk to Mr. Turbow the next day or two?

"A. Whenever he came in.

"Q. Would it be within a week?

"A. To me, in my mind, I recollect it was shortly after that.

"Q. Okay.

"A. That's the way I felt. It could have been longer. I'm just saying that's the way it feels like to me is the way it happened.

"Q. That is six to ten days after the incident, is that correct?

"A. That's the way I feel."

The police testified that they learned of the defendants' alleged use of a stolen credit card only a few days before trial, in November 1982.

The trial court necessarily found that the police were aware of the forgery in February 1982, not

November 1982 as they claimed. This finding is, however, not supported by the evidence adduced at the hearing on the motion to dismiss. Mr. Eck's testimony was simply too equivocal to rebut the testimony of the investigating officers.

Upon remand of this matter, should more evidence be adduced that the state was aware of the forgery in February 1982, and that it declined to seek an indictment, the trial court may reconsider the motion to dismiss. Upon the state of the record, however, the trial court's ruling is not supportable.

Accordingly, the decision of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed
and cause remanded.*

MARKUS, P.J., concurs.

NAHRA, J., dissents.

NAHRA, J., dissenting. Although the witness Eck equivocated, I believe the trial court was warranted in finding that the police were aware in February 1982 of the use of the credit card to rent the hotel room. I would thus reverse to permit a new trial only on the charge of using the stolen credit card at the shoe store, an event unrelated to those at the hotel.