DECISION AND JUDGMENT ENTRY
{¶ 1} This is an accelerated appeal from a judgment of the Ottawa County Court of Common Pleas which dismissed the indictment against defendant-appellee, Jennifer Hickle, k.n.a. Jennifer Mackey, for pre-indictment delay. Pursuant to 6th Dist.Loc.App.R. 12(B), we hereby transfer this case to our regular calendar. Appellant, the state of Ohio, appeals that dismissal, raising the following assignment of error:
 {¶ 2} "The trial court erred when finding that defendant's constitutional due process rights were violated by preindictment [sic] delay."
 {¶ 3} The facts of this case as found by the trial court are as follows. On September 20, 2002, appellee's nine-month old daughter, Chastity, was severely burned when she was placed in, or fell in, a bathtub containing scalding water. Chastity died the following day as a result of her injuries. Appellee was not home at the time of the incident, but her husband, Daniel Hickle, was home along with his friend, Larry Kenneth Keith. Daniel Hickle was indicted by the Ottawa County Grand Jury on October 7, 2002, and charged with child endangering, involuntary manslaughter and reckless homicide. Keith entered into an agreement with the Ottawa County Prosecutor's Office to give a deposition regarding the events of September 20, 2002, in exchange for the state agreeing not to prosecute him. Appellee was not asked to and did not give a deposition prior to the trial of her husband, and further did not testify before the grand jury prior to her husband's indictment.
 {¶ 4} On June 3 and 4, 2003, Daniel Hickle was tried in the Ottawa County Court of Common Pleas on the indicted charges. Appellee was subpoenaed to testify in that proceeding and so was not permitted in the courtroom during the trial except during her testimony and during closing arguments. During opening statements, the prosecutor stated: "Should other people besides the Defendant hold some responsibility? Maybe. We are not on trial for anyone today except this Defendant, his role in causing Chastity's death." During the trial, the state called appellee to testify for the prosecution. Prior to her testimony, appellee was not cautioned about her right against self-incrimination, was not appointed an attorney and was not advised that she had the right to counsel. Daniel Hickle, however, did exercise his right to remain silent and did not testify in his defense. Then, in her closing argument, Assistant Prosecutor Lorrain Croy stated: "Should other people be held responsible for Chastity's death? You heard the deposition of Kenny Keith. Should Jennifer have some responsibility criminally? That is not here for determination today. There has been no agreement that we weren't going to prosecute her. There has been no decision or discussion that I am aware of. We are here today to decide the defendant's responsibility." At the conclusion of the trial, Daniel Hickle was found guilty of all charges. In a June 5, 2003, article in the Port Clinton News Herald, the paper reported that Assistant Prosecutor Lorrain Croy "said this morning the door is still open for potential charges against Jennifer Hickle, the mother of 9-month-old Chastity Hickle. `It's still a possibility,' she said of taking the case back to an Ottawa County grand jury. `It has never been agreed not to do it.' The possibility was discussed after the case was presented last year to a grand jury — which resulted in Daniel Hickle's charges, she said. Croy added, though, that it hasn't been discussed since, and that the evidence will be reviewed again in the coming weeks."
 {¶ 5} Following the trial, Daniel Hickle's mother, Tami Grosjean, spoke with prosecutors and police about appellee's testimony at the trial. A supplemental police report was then prepared regarding Grosjean's statements. That report reads in relevant part: "Mrs. Grosjean stated that, contrary to what was presented at trial, Dan did not expect to have to be up with the children on 9-20-03 because Jennifer had always stayed home from work * * *. Mrs. Grosjean also commented on Jennifer's statement that she always turned off the hot water in the bathroom tightly because the faucet dripped. Mrs. Grosjean took issue with that statement * * *. She also took issue with Jennifer's statements that the girls never turned on the water and never tried to give themselves baths. Finally, Mrs. Grosjean took issue with Jennifer's statements that she last saw Chasity [sic] when she put her to bed at the time she woke up at 0500-0600 and sent Dan to bed. According to Mrs. Grosjean, Chasity [sic] refused to sleep in a crib or playpen and routinely slept on the living room floor and/or couch and not in the bed as reported by Jennifer."
 {¶ 6} On October 6, 2003, appellee was indicted by the Ottawa County Grand Jury and charged with one count of child endangering in violation of R.C. 2919.22(A). The state presented the case to the grand jury in light of the information provided by Tami Grosjean and quoted above. Subsequently, appellee filed a motion to dismiss the charges against her on the basis of pre-indictment delay. The state opposed the motion, but in a decision and order of November 4, 2004, the lower court granted the motion and dismissed the charges against appellee. The court held that appellee had demonstrated specific substantial prejudice to her defense in that she was deprived of her privilege against compelled self-incrimination when the state failed to warn her of her Fifth Amendment privilege prior to her testimony in the trial of Daniel Hickle. Although the court had previously ruled that her testimony or any evidence derived therefrom (i.e. the statements from Tami Grosjean) was inadmissible against her at trial, the court recognized that appellee had suffered actual prejudice because her testimony and derivative evidence resulted in her indictment. The court further found well-taken appellee's argument that she would be unable to identify and therefore prevent all of the evidence the state may attempt to admit against her that had been unconstitutionally obtained as a result of her testimony in Daniel Hickle's trial. Because such evidence would be "fruit of the poisonous tree," the court determined that appellee had met her burden of actual prejudice caused by the state's one-year delay in indicting her. The court then addressed the issue of whether there was a justifiable reason for the state's delay in prosecuting appellee. Because the court had determined that Tami Grosjean's testimony was inadmissible, the court further determined that the state had failed to articulate any substantive justification for the pre-indictment delay. Accordingly, the court granted the motion to dismiss. It is from that judgment that the state now appeals.
 {¶ 7} In its sole assignment of error, the state asserts that the trial court erred in finding that appellee established that she was actually prejudiced by the pre-indictment delay and in finding that the state failed to show a justifiable reason for the delay.
 {¶ 8} The United States Supreme Court has held that pre-indictment delay causing actual prejudice at trial could violate a defendant's Fifth Amendment right to due process. United States v. Marion (1971),404 U.S. 307; United States v. Lovasco (1977), 431 U.S. 783. The Supreme Court of Ohio followed Marion and Lovasco in State v. Luck (1984),15 Ohio St.3d 150, and unanimously confirmed its Luck holding in Statev. Whiting (1998), 84 Ohio St.3d 215. In order to succeed on a claim of due process violation, the defendant must first show that she suffered actual, substantial prejudice because of the delay. Lovasco, supra at 290; Whiting, supra at 217. Upon such a showing, the burden then shifts to the state to prove the reasons for the delay were justifiable and outweigh the prejudice suffered by the defendant. Whiting, supra at 217. The Supreme Court of Ohio has found actual prejudice to a defendant where key witnesses have died, memories have faded, and evidence has been lost. Luck, supra at 157. Regarding the issue of unjustifiable delay, the court in Luck further determined that "a delay in the commencement of prosecution can be found to be unjustifiable when the state's reason for the delay is to intentionally gain a tactical advantage over the defendant * * * or when the state, through negligence or error in judgment, effectively ceases the active investigation of a case, but later decides to commence prosecution upon the same evidence that was available to it at the time that its active investigation was ceased. The length of delay will normally be the key factor in determining whether a delay caused by negligence or error in judgment is justifiable." Id. at 158.
 {¶ 9} When reviewing a trial court's decision dismissing an indictment on the ground of pre-indictment delay, this "court must accord due deference to the trial court's findings of fact, but may freely review the trial court's application of the law to the facts." State v.Ricosky, 5th Dist. No. 2003CA00174, 2004-Ohio-2091, ¶ 13.
 {¶ 10} In the present case, the state first asserts that appellee failed to establish that she suffered actual, substantial prejudice by the state's delay in prosecuting her. The state argues that because the court, prior to ruling on the motion to dismiss, had already ruled that the state could not use appellee's testimony from the Daniel Hickle trial, or Tami Grosjean's statements regarding that testimony, at a trial on the charges against appellee, appellee failed to establish that she was prejudiced by the delay. Had the state, however, indicted appellee at the same time that it indicted Daniel Hickle, or at the very least warned her that her testimony could be used against her in a prosecution, appellee could have either asserted her privilege against self-incrimination, or reached an agreement with the state in exchange for her testimony in that trial. The state's delay in indicting appellee deprived her of the ability to exercise either of these defense strategies.
 {¶ 11} The state further asserts that the fact that the indictment was issued on inadmissible evidence cannot be grounds for a finding of actual prejudice because the Ohio Rules of Evidence do not apply to grand jury proceedings. In support, the state cites the case of State v. Baker
(2000), 137 Ohio App.3d 628, 645, wherein the court stated: "`Traditionally the grand jury has been accorded wide latitude to inquire into violations of criminal law. * * * The grand jury's investigative power must be broad if its public responsibility is adequately to be discharged.' State v. Crist (Oct. 20, 1997), Butler App. No. CA96-08-159, unreported, at 9, * * *. `The grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered. Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence * * * or even on the basis of information obtained in violation of a defendant's Fifth Amendment privilege against self-incrimination.' UnitedStates v. Calandra (1974), 414 U.S. 338, 344-345." In this case, however, appellee did not request dismissal of her indictment on the basis that the grand jury was exposed to inappropriate information, as was argued in Baker. Rather, appellee based her motion on pre-indictment delay and alleged that she was prejudiced by the delay in that she was not warned by the state that the testimony she gave at Daniel's trial could be used against her. The trial court found that appellee was indeed prejudiced by this delay and, as explained above, so do we.
 {¶ 12} We therefore must turn to the issue of whether the state produced evidence of a justifiable reason for the delay in prosecuting appellee. In the lower court, the state asserted that its prosecution of appellee was prompted by Tami Grosjean's statement's regarding appellee following Daniel Hickle's trial. The state asserted that the information was provided by Grosjean in an interview of June 20, 2003, and supported the presentation of the facts to the grand jury. The state further asserted that it brought the case to the grand jury after jurors in the Daniel Hickle trial expressed their belief that appellee should also be held criminally responsible for Chastity's death.
 {¶ 13} In State v. Floyd (Oct. 26, 1990), 6th Dist. No. L-89-277, we recognized that delaying indictments to protect the lives of undercover police officers working on ongoing investigations was a justifiable reason for delaying a prosecution for aggravated drug trafficking. Similarly, inState v. Ricosky, supra, the court found that the state had established a justifiable reason for a pre-indictment delay where it presented evidence that the delay was due to the fact that the offenses charged were part of a long-term, multi-jurisdictional investigation by local police departments and the FBI, the investigation was targeted against large-scale narcotics trafficking and testimony showed that indicting appellant any sooner would have compromised the investigation and endangered confidential informants. Unjustifiable delay, however, has been found when lost evidence compromises a defendant's ability to defend himself, State v. Brown (Mar. 17, 2000), 4th Dist. No. 98CA25, and where the state sought an indictment based on the same evidence that was available to it 15 years before, during the period of active investigation. Luck, supra.
 {¶ 14} In the present case, the state did not clearly articulate, either before the trial court or before this court, its reasons for delaying its prosecution of appellee. The prosecutor's statements during Daniel Hickle's trial indicate that the state was still considering indicting appellee. The state, however, delayed its prosecution of appellee until it had secured her testimony against Daniel Hickle. It secured that testimony without informing appellee of her rights against self-incrimination, then turned around and indicted her on the basis of that testimony. The state bore the burden of proving that its delay in indicting appellee was justified. Where it is the apparent desire of the state to force a defendant to create evidence against herself, a delay in prosecution is not justified. State v. Marcum, 7th Dist. No. 03 CO 36, 2004-Ohio-3036.
 {¶ 15} We therefore conclude that the trial court did not err in dismissing the indictment against appellee on the basis of pre-indictment delay and the sole assignment of error is not well-taken.
 {¶ 16} On consideration whereof, the court finds that substantial justice has been done the party complaining and the judgment of the Ottawa County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is ordered to pay the court costs of this appeal.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Pietrykowski, J., Singer, P.J., Concur.