JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, the State of Ohio, appeals the judgment of the common pleas court granting appellees' motions to dismiss the underlying indictment for various drug offenses. Upon review of the record and the arguments of the parties, we affirm the trial court's dismissal.
 {¶ 2} This appeal concerns the second indictment of appellees, Michelle Martin ("Martin") and Harvey Lloyd ("Lloyd"), which was issued on October 29, 2004. The incident giving rise to the indictments in this case occurred May 24, 2004 when the Solon police commenced a traffic stop of a 1988 Chevrolet van, which Lloyd was driving with Martin as a passenger. A search of the automobile revealed several items of suspected drugs and drug paraphernalia, and the appellees were arrested. On June 1, 2004, the police sent a number of the discovered items to the Bureau of Criminal Identification and Investigation ("BCI") for testing, including apparent "mushrooms" (psilocyn) found in suspicious candy, vegetable matter suspected to be marijuana, residue matter suspected to be cocaine, and pills.
 {¶ 3} Appellees were initially indicted on July 9, 2004 on the following three counts: Count 1, trafficking in marijuana in an amount less than 200 grams, in violation of R.C. 2925.03; Count 2, possession of cocaine in an amount under five grams, in violation of R.C. 2925.11; and Count 3, possession of criminal tools, in violation of R.C. 2923.24. Pursuant to this indictment, each appellee entered into plea negotiations. On September 29, 2004, appellee Lloyd pleaded guilty to Count 2 as charged, a felony of the fifth degree, and the remaining counts were nolled. On October 5, 2004, appellee Martin pleaded guilty to an amended Count 2, attempted possession of cocaine, a misdemeanor of the first degree, and the remaining counts were nolled.
 {¶ 4} Subsequent to their pleas, convictions and sentences in regard to the July 9, 2004 indictment, a second indictment was issued against appellees on October 29, 2004. This second indictment, directly at issue in this appeal, was predicated upon the same events that occurred on May 24, 2004, and charged appellees with five counts, including drug possession (of both psilocyn and marijuana), in violation of R.C. 2925.11; drug trafficking (in both psilocyn and marijuana), in violation of R.C. 2925.03; and possession of criminal tools, in violation of R.C. 2923.24.
 {¶ 5} The state primarily attributes the necessity for a second indictment to their delay in receiving the results of the items that were tested by BCI. The results were received in the time period between the first and second indictments.
 {¶ 6} In April 2005, appellees each filed a motion to dismiss the second indictment on grounds of a violation of their right to a speedy trial and collateral estoppel as incorporated into the double jeopardy clause of the United States Constitution. On May 9, 2005, the trial court granted the motions to dismiss. The state appeals this ruling of the trial court asserting the following assignment of error:
 {¶ 7} "I. WHETHER THE TRIAL COURT ERRED WHEN IT GRANTED THE DEFENDANT'S MOTION TO DISMISS A CASE WHICH CONSTITUTED A SECOND INDICTMENT PREMISED UPON THE SIMULTANEOUS POSSESSION OF DIFFERENT DRUGS AND WHETHER THE SIMULTANEOUS POSSESSION OF MULTIPLE DRUGS CONSTITUTES MULTIPLE OFFENSES OR A SINGLE OFFENSE UNDER R.C.2925.11 AND 2925.03."
 {¶ 8} The appellees were subjected to multiple prosecutions on charges arising from the same criminal activity. The state issued the first three-count indictment for drug trafficking in an amount of marijuana, drug possession in an amount of cocaine, and criminal tools, to wit: scale and/or money and/or packaging material and/or a 1988 Chevrolet van. This indictment was issued before the state received the results of BCI's testing of confiscated evidence from the May 24, 2004 arrest and while the initial charges were pending. Once the state received the test results, it had time to amend the charges before finalizing the plea agreements that concluded the prosecutions, but instead waited approximately three months after receiving the results to issue a second five-count indictment, again charging appellees with drug possession (this time in amounts of psilocyn and marijuana), drug trafficking (this time in amounts of psilocyn and marijuana), and criminal tools, to wit: money and/or 1988 Chevrolet van.
 {¶ 9} The Bill of Rights of both the United States and the Ohio Constitutions contain protections against individuals being put in double jeopardy for the same offense. State v. Sparano
(1984), 19 Ohio St.3d 193, 482 N.E.2d 1332. It is undisputed that the multiple indictments arose from the same criminal activity. It is also evident from the two indictments that the charge of possession of criminal tools constitutes the same offense; Count three of the first indictment and Count five of the second indictment both charge appellees with possession of criminal tools, in violation of R.C. 2823.24. Both counts concern money and/or a 1988 Chevrolet van. This is a clear double jeopardy violation, thus the dismissal of Count five of the October 29, 2004 indictment should be sustained. The entirety of the second indictment, however, requires further discussion.
 {¶ 10} In its Opinion and Entry, the trial court based its dismissal of all charges on collateral estoppel principles growing out of double jeopardy. In so doing, the trial court specifically did not address the speedy trial issues evident in this situation. This court holds that the second prosecutions brought against the appellees clearly violated their constitutional right to a speedy trial. Thus, the underlying indictment must be dismissed, and the trial court's order must be affirmed.
 {¶ 11} The Sixth and Fourteenth Amendments to the United States Constitution, as well as Section 10, Article I, of the Ohio Constitution, guarantee a criminal defendant the right to a speedy trial by the state. State v. O'Brien (1987),34 Ohio St.3d 7. In Barker v. Wingo (1972), 407 U.S. 514, 523,92 S.Ct. 2182, 2188, 33 L.Ed.2d 101, 112-113, the United States Supreme Court declared that, with regard to fixing a time frame for speedy trials, "[t]he States * * * are free to prescribe a reasonable period consistent with constitutional standards * * *." To that end, the Ohio General Assembly enacted R.C. 2945.71 in order to comply with the Barker decision. See, also, Statev. Lewis (1990), 70 Ohio App.3d 624.
 {¶ 12} R.C. 2945.71 states in pertinent part:
 {¶ 13} "(C) A person against whom a charge of felony is pending:
 {¶ 14} "* * *
 {¶ 15} "(2) Shall be brought to trial within two hundred seventy days after his arrest.
 {¶ 16} "* * *
 {¶ 17} "(E) For purposes of computing time under divisions (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days. This division does not apply for purposes of computing time under division (C)(1) of this section."
 {¶ 18} It is well established that the Ohio speedy trial statute constitutes a rational effort to enforce the constitutional right to a public speedy trial of an accused charged with the commission of a felony or misdemeanor and shall be strictly enforced by the courts of this state. State v.Pachay (1980), 64 Ohio St.2d 218.
 {¶ 19} Once the statutory limit has expired, the defendant has established a prima facie case for dismissal. State v.Howard (1992), 79 Ohio App.3d 705. At that point, the burden shifts to the state to demonstrate that sufficient time was tolled pursuant to R.C. 2945.72. State v. Geraldo (1983),13 Ohio App.3d 27.
 {¶ 20} Appellees were arrested on May 24, 2004. This court held in City of Shaker Hts. v. Kissee, Cuyahoga App. No. 81301, 2002-Ohio-7255, that the statutory speedy trial right begins at the time of a defendant's arrest, even if a defendant is not incarcerated pursuant to the arrest. Thus, any prosecution predicated upon the May 24th arrest must have been brought to trial within 270 days of May 24, 2004. Calculating that forward, without accounting for any time in jail, the speedy trial period expired on approximately February 18, 2005. Appellee Martin did not even make her first appearance until February 23, 2005, and the case was dismissed on May 11, 2005 — almost a full year after the appellees' initial arrest. This clearly establishes a prima facie case for dismissal.
 {¶ 21} As for appellee Lloyd, he was arrested and placed in jail on January, 28, 2005. He remained in jail until the trial court ordered the dismissal of this indictment. Pursuant to R.C.2945.71(E) each day spent in jail on pending charges counts as three days toward the 270-day speedy trial limit. Calculating at a three-for-one count beginning the day of Lloyd's arrest, his speedy trial time expired on approximately February 4, 2005. The first pretrial hearing concerning appellee Lloyd was not held until February 9, 2005. This clearly establishes a prima facie case for dismissal.
 {¶ 22} The state contends that the speedy trial time had tolled in this case for approximately 95 days pursuant to an outstanding capias for appellee Martin. A capias was also briefly issued against appellee Lloyd. The evidence, however, is insufficient for the state to meet their burden of proof to justify the tolling of any time due to an outstanding capias. This court has previously held that speedy trial statutes are to be strictly construed against the state. See State v. Boone,
Cuyahoga App. No. 81155, 2003-Ohio-996.
 {¶ 23} Furthermore, before speedy trial time can be tolled, the state must prove that the prosecution exercised reasonable diligence to secure the availability of the accused. See R.C.2945.72. The state has not shown such reasonable diligence during the time of the outstanding capiases. According to the record, during the entire time of the 95-day capias, appellee Martin was under the supervisory control of the probation department. The same was true for appellee Lloyd during the brief time of his capias. Given the recent history of these appellees with the state, the prosecution should have been aware of the probationary control. Any reasonable effort to bring appellees into custody via their probationary connections could have secured their availability to be tried within the speedy trial time. Since the state did not exercise such reasonable diligence, speedy trial time did not toll due to the outstanding capiases. Therefore, appellees' speedy trial time had run before they could be brought to trial, and the second indictment must be dismissed.
 {¶ 24} This court is also concerned, as was the trial court, with the state's issuance of the second indictment at all. There were clearly double jeopardy issues involved in this case that add to the necessity to affirm this dismissal. The analysis of whether double jeopardy is applicable differs between cases involving multiple punishments as opposed to multiple prosecutions. "In the case of a single prosecution, multiple punishments are prohibited if one offense is a greater or lesser included offense of the other, unless the legislature clearly indicates an intention that the punishments are to be cumulative. n2 Missouri v. Hunter (1983), 459 U.S. 359; Harris v.Oklahoma (1977), 433 U.S. 682; Blockburger v. United States
(1932), 284 U.S. 299. This standard is known as the `elements' test, because to determine whether two offenses stand in the relation of greater or lesser included offense, the statutory elements are compared, and if one offense contains all the elements of the other, plus additional elements, then it is the greater offense, and the other is the lesser included offense. If each offense, as defined by statute, contains an element which the other does not, the offenses are not related as greater and lesser included offenses." Sparano, supra at 195.
 {¶ 25} As to multiple prosecutions, as is the case here, the United States Supreme Court held:
 {¶ 26} "The Blockburger test is not the only standard for determining whether successive prosecutions impermissibly involve the same offense. Even if two offenses are sufficiently different to permit the imposition of consecutive sentences, successive prosecutions will be barred in some circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first. Thus in Ashe v. Swenson,397 U.S. 436 (1970), where an acquittal on a charge of robbing one of several participants in a poker game established that the accused was not present at the robbery, the Court held that principles of collateral estoppel embodied in the Double Jeopardy Clause barred prosecutions of the accused for robbing the other victims. And inIn re Nielsen, 131 U.S. 176 (1889), the Court held that a conviction of a Mormon on a charge of cohabiting with his two wives over a 2 1/2-year period barred a subsequent prosecution for adultery with one of them on the day following the end of that period.
 {¶ 27} "In both cases, strict application of theBlockburger test would have permitted imposition of consecutive sentences had the charges been consolidated in a single proceeding. * * * Nonetheless, the Court in both cases held the separate offenses to be the `same' for purposes of protecting the accused from having to "`run the gauntlet' a second time."Ashe, supra, at 446, quoting from Green v. United States,355 U.S. 184, 190 (1957)." Brown v. Ohio (1977), 432 U.S. 161,166-167, n. 6.
 {¶ 28} Here, four counts of the second indictment contain charges of drug trafficking and drug possession of both marijuana and psilocyn. The first two counts of the first indictment also charged appellants with drug possession and drug trafficking, concerning marijuana and cocaine. While there were differences in amounts and substances between the two indictments, the state possessed all the evidence and information it would use in its second indictment prior to the time that the appellees entered their pleas to the first indictment. Viewing the totality of the circumstances, collateral estoppel principles should apply. The state should not be allowed multiple tries at convicting these appellees when it had the means and opportunity to address all issues with a single prosecution. To avoid having appellees "run the gauntlet" a second time unnecessarily, the trial court's dismissal of the second indictment should be sustained.
 {¶ 29} On the grounds of speedy trial violations, and with support of double jeopardy concerns, we sustain the order to dismiss the second indictment.
Judgment affirmed.
It is ordered that appellees recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, J., and Rocco, J., concur.