{¶ 1} Defendant-appellant, Joshua Martin, appeals the March 20, 2007 judgment of the Wood County Court of Common Pleas which, following the court's denial of appellant's motion to dismiss all 14 counts in the indictment, sentenced appellant to a total of one year of imprisonment and four years of community control, to be served consecutively. For the reasons that follow, we affirm the court's decision. *Page 2 
 {¶ 2} The undisputed facts of this case are as follows. On February 8, 2005, appellant was arrested in Lucas County, Ohio where, following an internet conversation, he was attempting to meet what he believed to be a 15 year-old girl[1] for sexual activity. Upon appellant's arrest, the police searched his vehicle and found two CDs containing photographs of nude minors.
 {¶ 3} On February 6, 2005, the Toledo police contacted the Portage, Wood County, Ohio police, where appellant lived, to apprise them of the situation. The Portage police seized three computer hard drives and several computer discs from appellant's apartment. On February 22, 2005, a warrant was obtained to search the computer hard drives for child pornography or child erotica. Though the reason is unclear, it appears that the state did not learn until September 22, 2005, that illegal images were found on the computer hard drives.
 {¶ 4} In the interim, on May 31, 2005, appellant, in the Lucas County case, entered a no contest plea to one count of illegal use of a minor in nudity-oriented material and one count of importuning. On June 30, 2005, appellant was sentenced to five years of community control and was classified as a sexually oriented offender.
 {¶ 5} On June 29, 2006, appellant was indicted in Wood County on four counts of pandering sexually oriented matter involving a minor, R.C.2907.322(A)(5), and ten counts of illegal use of a minor in nudity-oriented material, R.C. 2907.323(A)(3). On July 17, 2006, appellant entered a not guilty plea to all of the counts in the indictment. *Page 3 
 {¶ 6} On December 1, 2006, appellant filed a motion to dismiss the charges against him. Appellant's argument was two-fold. First, appellant argued that his speedy trial rights had been violated because more than 270 days had passed since his arrest, in Lucas County, in February 2005. Appellant next argued that the pre-indictment delay of over 16 months violated his right to due process of law.
 {¶ 7} On December 28, 2006, the trial court denied appellant's motion to dismiss. Regarding appellant's speedy trial argument, the court determined that although the Lucas County and Wood County offenses arose from similar facts, "they did not arise out of the same facts." The court further found that appellant failed to demonstrate "substantial prejudice" from the alleged pre-indictment delay.
 {¶ 8} On March 21, 2007, following a no contest plea, appellant was sentenced to one year of imprisonment for each of the four counts of pandering sexually oriented material involving a minor; the sentences were ordered to be served concurrently. Appellant was also sentenced to four years of community control on three counts of illegal use of a minor in nudity-oriented material. Pursuant to a plea agreement, the remaining seven counts of illegal use of a minor in nudity-oriented material were dismissed. Appellant was also classified as a sexually oriented offender. This appeal followed.
 {¶ 9} Appellant now raises the following two assignments of error: *Page 4 
 {¶ 10} "First Assignment of Error:
 {¶ 11} "The trial court erred in denying the appellant's motion to dismiss on the grounds that the state violated the appellant's right to a speedy trial.
 {¶ 12} "Second Assignment of Error:
 {¶ 13} "The trial court erred in denying the appellant's motion to dismiss on the grounds that the state's pre-indictment delay violated the appellant's right to due process."
 {¶ 14} In appellant's first assignment of error he argues that his speedy trial rights were violated because the charges in the second indictment arose from the same facts. Specifically, appellant claims that the charges in the first indictment were based on images found on two compact discs in his vehicle and that the second indictment dealt with images found on his computer hard drives.
 {¶ 15} At the outset we note that the right to a speedy trial is guaranteed by the United States and Ohio Constitutions. State v.Adams (1989), 43 Ohio St.3d 67, 68. Pursuant to R.C. 2945.71(C)(2), a person charged with a felony shall be brought to trial within 270 days of his arrest. This court is required to independently review the issue of whether an accused was deprived of his right to a speedy trial, strictly construing the law against the state. Brecksville v. Cook,75 Ohio St.3d 53, 57, 1996-Ohio-171.
 {¶ 16} In State v. Baker, 78 Ohio St.3d 108, 1997-Ohio-229, the Supreme Court of Ohio addressed the speedy trial issue in relation to a subsequent indictment. In Baker, the defendant, a pharmacist, was charged with two counts of drug trafficking and two counts of aggravated trafficking. Id. at 109. The charges stemmed from the defendant *Page 5 
making several illegal prescription drug sales to police informants. Id. Based on this information, the police began auditing the records seized at the defendant's pharmacies. As a result of the audits, a second indictment was filed, approximately one year after the initial arrest, charging the defendant with additional counts of drug trafficking. Id.
 {¶ 17} In examining the merits of the defendant's arguments, theBaker court noted that "subsequent charges made against an accused would be subject to the same speedy-trial constraints as the original charges, if additional charges arose from the same facts as the first indictment." Id. at 110. The court, concluding that the charges at issue did not arise from the same sequence of events, noted:
 {¶ 18} "The original charges against Baker resulted from an investigation by law enforcement agents using informants to illegally purchase prescription drugs from Baker's pharmacies. These original charges were based on the controlled buys that occurred before Baker's arrest on June 10, 1993, and the search of Baker's two pharmacies. After executing search warrants at Baker's two pharmacies, the state began investigating Baker's pharmaceutical records to determine if additional violations had occurred. As a result of its analysis of the records seized on June 10, 1993, the state filed additional charges of drug trafficking and Medicaid fraud, which the state could not have known of until both audits of Baker's records were completed." Id. at 111.
 {¶ 19} In the present case, the original indictment stemmed from an undercover operation concerning appellant's attempted contact with an individual he believed to be a minor. Following a search of appellant's vehicle the computer discs were recovered. *Page 6 
Based on these events, a search warrant was issued to examine appellant's computer hard drives. The audit in Baker is analogous to the examination of appellant's hard drives; the state, until the examination of the hard drives was complete, could not have known about the images on the hard drives.[2]
 {¶ 20} Based on the foregoing, we find that appellant's speedy trial rights were not violated because the charges in the second indictment stem from additional facts. Accordingly, appellant's first assignment of error is not well-taken.
 {¶ 21} In appellant's second assignment of error, he contends that appellant's due process rights were violated by the long delay between the gathering of evidence in February 2005, and the indictment in June 2006.
 {¶ 22} The United States Supreme Court has held that pre-indictment delay causing actual prejudice at trial could violate a defendant's Fifth Amendment right to due process. United States v. Marion (1971),404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468; United States v.Lovasco (1977), 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752. The Supreme Court of Ohio followed Marion and Lovasco in State v. Luck (1984),15 Ohio St.3d 150, and unanimously confirmed its Luck holding in State v.Whiting, 84 Ohio St.3d 215, 1998-Ohio-575. In order to succeed on a claim of due process violation, the *Page 7 
defendant must first show actual prejudice because of the delay. Id. at 217. Upon such a showing, the burden then shifts to the state to prove the reasons for the delay were justifiable and outweigh the prejudice suffered by the defendant. Id. The Supreme Court of Ohio has found actual prejudice to a defendant where key witnesses have died, memories have faded, and evidence has been lost. Luck, supra at 157. Regarding the issue of unjustifiable delay, the Luck court further determined that "a delay in the commencement of prosecution can be found to be unjustifiable when the state's reason for the delay is to intentionally gain a tactical advantage over the defendant * * * or when the state, through negligence or error in judgment, effectively ceases the active investigation of a case, but later decides to commence prosecution upon the same evidence that was available to it at the time that its active investigation was ceased. The length of delay will normally be the key factor in determining whether a delay caused by negligence or error in judgment is justifiable." Id. at 158.
 {¶ 23} Courts reviewing a decision on a motion to dismiss for pre-indictment delay accord deference to the lower court's findings of fact but may independently review the lower court's application of those facts to the law. State v. Henley, 8th Dist. No. 86591, 2006-Ohio-2728, ¶ 7.
 {¶ 24} In the instant case, appellant argues that he was prejudiced by the delay because he lacked the ability to enter into a comprehensive plea agreement regarding the Lucas and Wood County indictments. In support of his argument, appellant relies heavily on this court's case captioned State v. Mackey, 6th Dist. No. OT-04-050, 2005-Ohio-3066. *Page 8 
In Mackey, a state appeal, the appellee's infant daughter died after being severely burned in a bathtub. Appellee's husband, Daniel Hinkle, was indicted on October 7, 2002, approximately two weeks after the incident. At Hinkle's trial, appellee testified for the state. At the time, appellee did not have counsel and she was not cautioned about her right against self-incrimination. During closing arguments, the state suggested the possibility of charging appellee for her daughter's death; similar statements were made to the local newspaper.
 {¶ 25} Following Hinkle's trial and conviction, Hinkle's mother, Tami Grosjean, spoke with prosecutors and police regarding appellee's trial testimony. Grosjean disputed the veracity of several statements appellee made during her testimony. Thereafter, on October 6, 2003, appellee was indicted on one count of child endangering. Appellee filed a motion to dismiss the charge on the basis of pre-indictment delay; the motion was granted.
 {¶ 26} On appeal by the state, this court upheld the trial court's judgment. We found:
 {¶ 27} "Had the state * * *indicted appellee at the same time that it indicted Daniel Hinkle, or at the very least warned her that her testimony could be used against her in a subsequent prosecution, appellee could have either asserted her privilege against self-incrimination, or reached an agreement with the state in exchange for her testimony in that trial." Id. at ¶ 10. *Page 9 
 {¶ 28} We further noted that "[t]he state * * * delayed its prosecution of appellee until it secured her testimony against Daniel Hinkle. It secured that testimony without informing appellee of her rights against self-incrimination, then turned around and indicted her on the basis of that testimony." Id. at ¶ 14.
 {¶ 29} In Mackey, it is obvious that appellee was prejudiced by the state's pre-indictment delay. Appellee was unable to avail herself of her basic right against self-incrimination. In the present case, appellant argues that he was prejudiced by the pre-indictment delay because he lost the opportunity to engage in comprehensive plea negotiations between Lucas and Wood Counties. Upon review of the standard set forth in Luck, supra, and Whiting, supra, we find that appellant has failed to establish actual prejudice. There is no indication in the record that such negotiations would have been a possibility. Accordingly, we find that appellant's second assignment of error is not well-taken.
 {¶ 30} On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair proceeding and the judgment of the Wood County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
 JUDGMENT AFFIRMED. *Page 10 
MARK L. PIETRYKOWSKI, P.J., ARLENE SINGER, J., WILLIAM J. SKOW, J., CONCUR.
[1] The "girl" was actually a Toledo police detective.
[2] Appellant relies on two Eighth Appellate District cases which we find to be distinguishable. State v. Lloyd, 8th Dist. Nos. 86501 and 86502, 2006-Ohio-1356, and State v. Rutkowski, 8th Dist. No. 86289,2006-Ohio-1087, both involved charges which stemmed from a single traffic stop and discovery of suspected narcotics. Additional charges were delayed due to BCI testing. The court concluded that because no additional evidence was discovered after the initial stop, the charges were based on the same facts and a speedy trial violation occurred.Lloyd at ¶ 26; Rutkowski at ¶ 28-29. *Page 1